IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BERNARD AND JOAN CARL,           *

    Plaintiffs,                          *

     v.                                  *          Civil Action No.: RDB-05-3124

RAYLYN FARMS, INC., *et al.*,      *

    Defendants.                        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Currently pending before this Court is the Motion for Partial Summary Judgment filed by Defendants Raylyn Farms, Inc. ("Raylyn"), Ray Little ("Ray"), and Lynne Little ("Lynne") (collectively, "Defendants") and the Motion for Leave to file Surreply filed by Plaintiffs Bernard J. Carl and Joan T. Carl ("Plaintiffs"). The issues are fully briefed and no hearing is necessary.[1] *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Plaintiffs' Motion for Leave to file Surreply (Paper No. 55) is GRANTED and Defendants' Motion for Partial Summary Judgment (Paper No. 41) is DENIED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In a previous Memorandum Opinion, this Court noted that the following facts are alleged in the Amended Complaint:

> Raylyn provides services associated with equestrian competitions, including buying, selling, training, and stabling horses. Plaintiffs have two daughters interested in riding horses, so they approached Raylyn to assist them in purchasing, training, and boarding

---

[1] On January 3, 2007, this Court held a hearing addressing various discovery motions. (*See* Paper Nos. 31-34.) During that hearing, counsel for both sides discussed the factual background of this case in detail.

suitable horses for competition and for investment.  The Plaintiffs allege that the Littles held themselves out to be experts in performing those services.  Over approximately three years, Plaintiffs purchased seven horses for over $1 million, and allegedly paid substantial fees to Raylyn for its services in facilitating the sales, training, and boarding of the horses.  Plaintiffs contend that the Defendants abused their "position of trust" by skimming money, which was heightened after the Defendants allegedly refused to produce Raylyn's records of what the company actually paid for the horses.

Mem. Op., 11/14/06 at pp. 1-2.

As noted above, the core factual allegations in this case relate to the purchase of seven horses by Plaintiffs.  In some of those transactions, Plaintiffs purchased horses directly from Defendants.  In other transactions, Plaintiffs claim that Defendants were acting as their agent in dealing with other horse sellers.  Plaintiffs allege that Defendants made a "secret profit" on these transactions by pocketing the difference between the price paid by Plaintiffs and the sale price demanded by the third-party horse sellers.  The transactions at issue are summarized below:

| Horse | Amount Plaintiffs Paid Defs | Amount Defs Paid Seller | Plaintiff's Allegations |
|---|---|---|---|
| *Ransom* | $275,000 | unknown | "The Carls *still* do not know the real sale price, because defendants have not revealed it.  Instead, defendants are now claiming that Raylyn actually purchased the horse '[p]rior to the sale' to the Carls."  (Paper No. 45 p. 9 (emphasis in original; citation omitted).) |
| *Granius* | $175,000 | $80,000 plus a young horse | "The Carls learned from a subpoena served on Ridge Farm that Raylyn did not pay the $80,000 'purchase price' to Ridge Farms until after the Carls paid $175,000 to Raylyn."  (*Id*. at p. 10 (citation omitted).) |
| *Champigny* | $600,000 | $400,000 | "[D]efendants claim now that *they* actually purchased Champigny, with the Carls' money, three days *after* the Carls purchased the horse.  And they made a secret profit of at least $160,000 after specifically and expressly representing to the Carls that they were not taking any profit or commission on the sale."  (*Id*. at p. 12 (emphasis in original).) |

| Horse | Amount Plaintiffs Paid Defs | Amount Defs Paid Seller | Plaintiff's Allegations |
|---|---|---|---|
| *Cassis* | $200,000 | unknown | "Defendants have not provided *any* information about this transaction. Their interrogatory answers claim that 'Raylyn purchased Cassis from a seller in Switzerland in or about June 2000 for an unknown amount. Raylyn has not been able to locate records. . . ." (*Id*. (emphasis in original; citation omitted)).) |
| *White Russian* | $300,000 | n/a | "Defendants stated that they had purchased the horse for $275,000 less than a year earlier . . . The plaintiffs' principal problem with White Russian is that the defendants owned the horse long enough to know that it was not worth $300,000." (*Id*. at p. 13.) |
| *Mimosa* | $150,000 | $90,000 | "In discovery . . . plaintiffs learned for the first time that the defendants also earned a secret profit on Mimosa. Defendants' interrogatory answer [stated:] 'Raylyn sold Mimosa to the Carls in September 2002 for $150,000. Raylyn purchased Mimosa from Daan Nanning for approximately $90,000 in or about August 2002." (*Id*. at pp. 13-14 (citation omitted).) |
| *Niagara* | $160,000 | n/a | "Plaintiffs purchased Niagara on the Defendants' representations that she would be suitable for use by plaintiffs' younger daughter Jennifer. . . . When Niagara arrived in the U.S., however, the horse proved to be totally unsuitable and unsafe . . . [D]efendants refused to honor their commitment to repurchase the horse and refund the plaintiffs' money. Nonetheless, . . . defendants [later] offered to repurchase the horse for $155,000, an offer that plaintiffs accepted. Defendants then breached that agreement as well." (*Id*. at pp. 14-15.) |

On November 18, 2005, Plaintiffs filed their Complaint against Defendants. The

Complaint asserted seven causes of action: (1) breach of fiduciary duty; (2) fraudulent

concealment; (3) negligent misrepresentation; (4) violation of the Maryland Consumer

Protection Act; (5) negligence; (6) breach of contract; and (7) conversion. On October 13, 2005,

Plaintiffs filed a Motion for Leave to File an Amended Complaint. (Paper No. 29.) Plaintiffs

sought to add claims for fraud and punitive damages in light of evidence produced during

discovery.  (*Id*.)  On November 14, 2006, this Court granted Plaintiffs' Motion for Leave to File

an Amended Complaint.  *See* Mem. Op. & Order, 11/14/06.  On December 1, 2006, Defendants

filed the subject Motion for Partial Summary Judgment.  (Paper No. 41.)  On January 3, 2007,

this Court held a hearing addressing various discovery motions.  (*See* Paper Nos. 31-34.)  On

February 23, 2007, Defendants filed the subject Motion for Leave to file Surreply.  (Paper No.

55.)  Discovery is ongoing.  (*See* Paper No. 56 (setting October 1, 2007 as the deadline for

discovery in this case).)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material*

fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(emphasis added).  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court

explained that only "facts that might affect the outcome of the suit under the governing law" are

*material*.  *Id.* at 248.  Moreover, a dispute over a material fact is *genuine* "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The court further

explained that, in considering a motion for summary judgment, a judge's function is limited to

determining whether sufficient evidence supporting a claimed factual dispute exists to warrant

submission of the matter to a jury for resolution at trial.  *Id.* at 249.  In that context, a court must

consider the facts and all reasonable inferences in the light most favorable to the nonmoving

party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

4

## I.  The Complaint.

The Amended Complaint asserts eight causes of action.  In Count I, Plaintiffs contend that Defendants breached their "fiduciary duty of care" with respect to the services of "locating, investigating, evaluating, recommending purchase of, and caring for plaintiffs' horses and the training and coaching of plaintiffs' daughters."  (Am. Compl. ¶ 95.)  In Count II, Plaintiffs assert a claim for fraudulent concealment based on Defendants' alleged failure to "disclose all material information in connection with the purchase, management, and handling of the plaintiffs' horses."  (*Id*. at ¶ 103.)  In Count III, Plaintiffs maintain that Defendants negligently misrepresented the price and medical condition of the horses that Plaintiffs eventually purchased, and also whether those horses would meet Plaintiff's needs.  (*Id*. at ¶¶ 108-114.)  In Count IV, Plaintiffs allege that Defendants' sale of *White Russian* and *Niagara* constitutes violations of the Maryland Consumer Protection Act.  (*Id*. at ¶¶ 115-118.)

In Count V, Plaintiffs assert a claim for negligence on essentially the same theory as set forth in Count III.  (*Id*. at ¶¶ 119-124.)  In Count VI, Plaintiffs contend that "Defendants breached the parties' contract by failing to accept the return of *Niagara* and by refusing to return the purchase price."  (*Id*. at ¶ 129.)  In Count VII, Plaintiffs contend that Defendants converted their property "by using the plaintiffs' horses for their own purposes and by allowing unauthorized riders . . . to ride and compete with plaintiffs' horses without the plaintiffs' knowledge or permission."  (*Id*. at ¶ 132.)  Finally, in Count VIII, Plaintiffs allege that Defendants' misrepresentations regarding aspects of the transactions involving *Granius*, *Champigny*, and *Mimosa* constitutes fraud and deceit.  (*Id*. at ¶¶ 135-144.)

## II.  Motion for Partial Summary Judgment.

## A.    Overview.

Defendants' Motion for Partial Summary Judgment seeks a variety of rulings.

Specifically, Defendants request that:

•    Summary judgment should be entered with respect to Counts 1, 2, 3, 4 (with respect to *White Russian*), 5, and 8 of the Amended Complaint because the statute of limitations bars those claims.  (Defs' Reply p. 1.)

•    Summary judgment should be entered with respect to Counts 1, 2, and 3 because there is no genuine dispute that Defendants were not "sales agents" or "fiduciaries" for—or in a "confidential relationship" with—Plaintiffs.  (*Id*. at 2.)

•    An order should be entered under Rule 56(d) with respect to the "investment" and "suitability" claims, (*id*. at 3), the issue of the "true identity" of the owners of the horses, (*id*. at 25), and the "dual agency" claims, (*id*.).

Plaintiffs respond with procedural and substantive arguments.  For example, Plaintiffs contend that discovery is needed to properly evaluate the causes of action asserted in the Amended Complaint.  Plaintiffs also point out that Defendants' requests for judgment that do *not* resolve any single claim are improper under the Federal Rules of Civil Procedure.  Finally, Plaintiffs contend that genuine factual disputes prevent this Court from entering summary judgment in Defendants' favor.  (*See generally* Pls' Opp.)

## B.    Motion for Leave to File Surreply.

As noted above, Plaintiffs move for leave to file a surreply to respond to a new argument set forth in Defendants' reply papers.  (*See generally* Paper No. 55.)  This Court has previously noted that "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).  In this case, Plaintiffs should be afforded an opportunity to respond to Defendants' claim that "the Carls have not rebutted the contents of

Mrs. Carl's letter with an affidavit from Mrs. Carl." (Defs' Reply p. 1.)  In addition, Defendants do not oppose the motion.  Accordingly, the Motion for Leave to file Surreply filed by Plaintiffs (Paper No. 55) is GRANTED.

### C.     Rule 56(f) Affidavit.

In light of the fact that discovery is ongoing in this case, this Court acknowledges the general principle that "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson*, 477 U.S. at 250 n.5).  The nonmoving party, however, "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Techs. Apps. & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996).  "If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'" *Harrods Ltd.*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961).  In this case, Plaintiffs have filed a Rule 56(f) affidavit detailing the need for discovery.  (*See* Pls' Opp. Ex. A.)

Given the early stage of this case, it is not appropriate for this Court to rule on certain matters raised by the pending Motion for Partial Summary Judgment.  For example, Plaintiffs point out the following with respect to the statute of limitations defense asserted by Defendants:

> Evidence obtained in further discovery may support plaintiffs'
> claims that the defendants knowingly withheld information that
> would have prompted plaintiffs to investigate their claims.  That
> information would support the arguments set forth below,

7

> including plaintiffs' argument that § 5-203 tolled limitations
> because of defendants' fraud.

(Pls' Opp. p. 19.)  This alone is sufficient grounds to deny Defendants' request that judgment be

entered in their favor with respect to Counts 1, 2, 3, 4 (as to *White Russian*), 5, and 8 of the

Amended Complaint pursuant to the Maryland statute of limitations.  Defendants simply do not

present this Court with sufficient grounds to conclude that discovery will not lead to the

generation of any material evidence relating to the fraud exception to the statute of limitations.[2]

This conclusion is supported by, *inter alia*, the Rule 56(f) Affidavit submitted by Defendants,

which explains that no witnesses or third-party witnesses have been deposed, and details some of

the discovery sought by Plaintiffs.  (*See* Pls' Opp. Ex. A); *see also* Discussion § II.F.1, *infra*

(discussing statute of limitations defense in further detail).

###### D.        Judgment on Less Than an Entire Claim.

Summary judgment is generally inappropriate under Rule 56(a) of the Federal Rules of

Civil Procedure where it is not dispositive of an entire claim.  *See* Fed. R. Civ. P. 56(a); *Classen*

*Immunotherapies, Inc. v. King Pharmaceuticals, Inc.*, 403 F. Supp. 2d 451, 456 (D. Md. 2005)

("Under Rule 56 a party is not entitled to summary judgment if the judgment would not be

dispositive of an entire claim") (citing *Felix v. Sun Microsystems*, 2004 WL 911303, at *7 (D.

Md. 2004) (unpublished).)  In this case, Defendants seek entry of judgment on matters that

would not dispose of an entire claim, *e.g.*, Defendants' representations that *Ransom*, *White*

*Russian*, and *Niagara* would be "suitable" for Plaintiffs' purposes.  As Plaintiffs point out,

---

[2]        *See* MD Code Ann., Cts. & Jud. Proc. § 5-203 (West 2007) ("If the knowledge of
a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall
be deemed to accrue at the time when the party discovered, or by the exercise of ordinary
diligence should have discovered the fraud.").

"these representations do not form the sole predicate of any claim in the [Amended] Complaint. . . ." (Pls' Opp. p. 35); *see also* Discussion § II.E, *infra* (discussing same issues in the context of Rule 56(d)).  Given the early posture of this litigation and the principles discussed above, this Court is not inclined to enter judgment as a matter of law on discrete factual and legal issues that do not resolve an entire cause of action.

       **E.**      **Rule 56(d) Ruling.**

      In their reply papers, Defendants request that this Court "make determinations under Fed. R. Civ. P. 56(d) as to facts and issues raised in the Defendants' motion that are not in controversy." (Defs' Reply at p. 3.)  Specifically, Defendants seek an order establishing that there is no basis for Plaintiffs' (1) "investment" and "suitability" claims, (2) claims based on the "true identity" of the owners of the horses, and (3) "dual agency" claims.  (*See id.* at pp. 3 & 25.)

      Determination of facts and issues that are not in controversy is governed by Rule 56(d), which provides:

> **Case Not Fully Adjudicated on Motion**.  If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court . . . shall if practicable ascertain what material facts exist without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy. . . . Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed. R. Civ. P. 56(d); *see also* 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2736 (3d ed. 1998) (explaining that Rule 56(d) allows the court to "withdraw sham issues from the case and to specify those facts that really cannot be controverted.").

      In this case, Defendants' Motion for Partial Summary Judgment does not support the entry of an order under Rule 56(d).  First, Defendants seek a determination with respect to

Plaintiffs' alleged "investment claims" and "suitability claims."  These "claims" refer to Plaintiffs' allegation that they suffered damages by relying on statements by Defendants that *Ransom* and *Champigny* were good "investments," (*see* Am. Compl. ¶¶ 33 & 43), and that *Ransom*, *White Russian*, and *Niagara* would be "suitable" as riding horses for Plaintiffs' daughters Alexandra and Jennifer, (*see id*. at ¶¶ 30, 56, & 63).  However, the Amended Complaint does not assert "investment claims" or "suitability claims."  Instead, it asserts causes of action for fraudulent concealment, negligent misrepresentation, fraud, and so on that are based *in part* on the allegation that Plaintiffs relied on Defendants' representations regarding the investment potential and suitability of the horses at issue.  It may be that some or all of the misrepresentations alleged in the Amended Complaint are not actionable.[3]  This determination, however, must await the close of discovery.  It is simply not practicable for this Court to resolve these disputes at this early point in the litigation.  After discovery closes, the parties may seek to clarify the relation between specific representations and the causes of action asserted in the Amended Complaint.[4]

---

[3]     *Cf.*, *e.g.*, *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 512-13 (Md. Ct. Spec. App. 1999) ("Loyola's representations were obvious examples of the kind of 'puffing' and 'sales talk' language that many people have come to expect from car dealers.  As we see it, this is the sort of speech that is offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer, and on which no reasonable person would rely.") (internal quotation marks and citation omitted), *cert. denied*, 727 A.2d 382 (Md. 1999); *Forbis v. Reilly*, 684 F. Supp. 1317, 1322 (W.D. Pa. 1988) (statement that "this colt was one of the finest ever bred" and "perfect for use as a foundation stallion" no more than puffing and not actionable as fraud under Pennsylvania law), *aff'd without opinion*, 862 F.2d 307 (3d Cir. 1988).

[4]     This Court notes that alleged misrepresentations regarding the "investment value" of a horse may be significant in the context of transaction where Defendants allegedly concealed the actual value of the horse to retain a "secret profit."  Similarly, alleged misrepresentations regarding "suitability" may matter in the context of a transaction where Defendants allegedly concealed specific information regarding a horse's medical conditions.

Second, Defendants request that this Court "enter a summary judgment ruling establishing that the Defendants did not conceal the true *identities* of the owners of the horses purchased by the Carls." (Defs' Reply p. 25 (emphasis added).)  The Amended Complaint, however, does not appear to contain such allegations.  For example, Defendants contend that paragraph 117 of the Amended Complaint alleges facts relevant to a claim for fraudulent concealment of the identify of a horse's owner.  (Defs' Mem. Supp. Summ. J. p. 48 n.81.)  Paragraph 117 provides:

> Defendants offered to sell and sold *White Russian* and *Niagara* to plaintiffs by means of unfair and deceptive trade practices, including (a) representations that these horses had qualities, characteristics, benefits, standards, and uses that they did not have; (b) failing to state material facts that deceived or had the tendency to deceive the plaintiffs; (c) deception and knowing concealment or omission of material facts in connection with the promotion or sale of the horses.

(Am. Comp. ¶ 117.)  This paragraph of the Amended Complaint simply does not allege that Defendants concealed the *identity* of the owners of the horses.[5]  Accordingly, there is no basis for this Court to enter the Rule 56(d) order requested by Defendants.

Finally, Defendants request that this Court make a ruling under Rule 56(d) with respect to Plaintiffs' so-called "dual-agency claim."  Defendants contend that this claim is asserted in paragraph 21 of the Amended Complaint:

> Defendants served as agents and fiduciaries for plaintiffs with respect to the selection and purchase of each of the horses identified herein.  The Littles represented to the plaintiffs that defendants would act in the best interest of the plaintiffs in these transactions.  Defendants never disclosed that they had any dual agency arrangement with any seller of horses to be sold to the

---

[5]    (*See also* Am. Compl. ¶¶ 95, 100, 103-104, 110, 117, 121-122, 136-138.)

plaintiffs, and plaintiffs justifiably believed that defendants had no
such arrangement.

(Am. Comp. ¶ 117.)  The above paragraph, however, does not assert a "dual-agency claim."

Instead, it alleges that Plaintiffs are not aware of any "dual-agency" arrangement.  This is

consistent with the position taken by Plaintiffs in their response to Defendants' Interrogatory No.

13.[6]  As a result, there is no basis for this Court to enter a Rule 56(d) order addressing this

matter.  In sum, there is no basis for this Court to enter an order under Rule 56(d) relating to

Plaintiffs' "investment," "suitability," "true identity," or "dual agency" claims.  Accordingly,

Defendants request for such an order is DENIED.

**F.     Factual Disputes.**

**(1)       Statute of Limitations.**

A threshold dispute in this case is whether some of Plaintiffs claims are barred by

Maryland's three-year statute of limitations.  Specifically, Defendants argue that Counts 1, 2, 3,

4 (as to *White Russian*), and 5 of the Amended Complaint are barred because (1) each of

Plaintiffs' claims relating to "pre-purchase veterinary reports" arose on the date that the horses

were sold, (2) six of the horses were sold more than three years prior to the filing of the

Complaint, and (3) under the discovery rule, Plaintiffs' should have also investigated their

related "medical" and "health" claims.   (*See generally* Defs' Mem. Supp. Summ. J. pp. 20-28.)

In Maryland, a civil action must be filed within three years from the date it accrues.  *See*

Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2007).  Under the discovery rule, which is

---

[6]       (*See* Defs' Mem. Supp. Summ. J. Ex. 1 pp. 16-17 ("Plaintiffs do not contend that
Defendants had a dual-agency arrangement with any of the sellers of any of the horses.  Rather,
Defendants represented to Plaintiffs that they were acting as agents for the Plaintiffs in the
purchases of several of the horses described herein.").)

generally applicable to all claims in Maryland, "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981). "'The discovery rule tolls the accrual of the limitations period until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury.'" *Dashiell v. Meeks*, 913 A.2d 10, 21 (Md. 2006) (quoting *Frederick Road Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (Md. 2000)). When a cause of action accrues under § 5-101 is a question that is "left to judicial determination." *Poffenberger*, 431 A.2d at 679 (*citing Harig v. Johns-Manville Products*, 394 A.2d 299, 302 (Md. 1978)). "Depending upon the nature of the assertions being made with respect to the limitations plea, this determination may be solely one of law, solely one of fact or one of law and fact." *Poffenberger*, 431 A.2d at 679; *see also Greene Tree Home Owners Ass'n v. Greene Tree Assocs.*, 749 A.2d 806, 821 (Md. 2000) (the three-year statute of limitation in § 5-101 applies to claims based on the Maryland Consumer Protection Act); *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002) (same).

After considering the parties' submissions, this Court rejects Defendants' argument that Counts 1, 2, 3, 4 (as to *White Russian*), and 5 of the Amended Complaint are barred under the statute of limitations. First, Plaintiffs have forecast sufficient evidence to establish a genuine dispute of fact regarding when they discovered their claims. For example, Plaintiff Bernard J. Carl submits an affidavit providing that he and his wife did not learn that it was standard practice to provide "pre-purchase veterinary reports" until after November 2002.[7] In a supplemental

---

[7]     (*See* Pls' Opp. Ex. A at ¶ 26 ("When we began purchasing horses through the defendants, neither Joan nor I knew that it was customary and accepted practice in the equine industry for an agent in the defendants' position to provide veterinary reports to the purchaser of

affidavit, moreover, Mr. Carl notes that although he made clear in July 2002 that he "did not

want other individuals to ride our horses without our prior authorization," it was not until

December 2003 that he "learned that Mrs. Little had not adhered to my instructions on this

issue." (Pls' Surreply Ex. N at ¶¶ 5-6.)  Second, the statute of limitations may be tolled to the

extent that Defendants concealed material facts that prevented Plaintiffs from discovering their

claims.  As alleged in the Amended Complaint:

> Defendants deliberately concealed material facts from the plaintiffs
> regarding these transactions.  Among other things, the defendants
> concealed: (a) the true cost of the horses acquired on plaintiffs'
> behalf; (b) the medical and veterinary histories of the horses
> acquired on plaintiffs' behalf; (c) the commission profit, or other
> consideration the defendants received in connection with the
> plaintiffs' acquisition of these horses; (d) the failure to provide
> information and records necessary to . . . maintain medical
> insurance on *Ransom*; (e) the fact that the Littles were allowing
> unauthorized individuals to ride plaintiffs' horses; and (f) the fact
> that plaintiffs' horses sustained injuries while ridden by
> unauthorized individuals.

(Am. Compl. ¶ 104; *see also id*. at ¶¶ 39, 40, 136-38).[8]  As noted above, the extent to which the

fraud exception applies in this case may depend on evidence produced during the discovery

process.  *See* Discussion § II.C, *supra* (discussing fraud exception in the context of Rule 56(f)).

Accordingly, Defendants' Motion for Partial Summary Judgment is DENIED with respect to

_____

an expensive competition horse.  We did not learn of that practice until after November 2002.").)

[8]      This Court does not reach the question whether the statute of limitations is also
tolled in light of the alleged "confidential relationship" between Plaintiffs and Defendants under
a "continuation of events" theory.  *Cf. Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1072-
73 (Md. Ct. Spec. App. 2002) ("The heightened duty owed by insurance agents allows greater
reliance by the insured, and creates a correspondingly lesser standard of vigilance in detecting
that the issued policy did not live up to the agents' representations"), *cert. denied*, 818 A.2d 1105
(Md. 2003).

Defendants' claim that Counts 1, 2, 3, 4 (as to *White Russian*), and 5 of the Amended Complaint are barred by the statute of limitations.

> **(2)   Agency Relationship.**

Defendants also request that this Court enter summary judgment with respect to Counts 1, 2, and 3 because "there is no genuine dispute that the Carls did not depend on the Defendants in any sense that would constitute a confidential relationship under Maryland law, and there is no credible evidence that any of the Defendants acted as sales agents or fiduciaries in situations where Raylyn sold horses to the Carls."  (Defs' Reply p. 2; *see also* Am. Compl. ¶¶ 21-22, 95, 102, 109 (alleging the existence of an agent-principal relationship).)

This Court has previously considered whether an agency relationship exists under similar facts.  *See Gussin v. Shockey*, 725 F. Supp. 271, 272 (D. Md. 1989) (noting that "Frederic Gussin and his father, Paul Gussin, entered into an arrangement with the defendant Richard Shockey under which Shockey agreed to assist the Gussins in buying, maintaining, breeding and selling thoroughbred horses.").  This Court explained that:

> "An agency relationship is the 'fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'"  *Federal Sav. and Loan Ins. Corp. v. Quality Inns*, 674 F. Supp. 522, 527 (D. Md. 1987), *aff'd in part*, *vacated in part*, *on other grounds*, 876 F.2d 353 (4th Cir. 1989), quoting Restatement (Second) of Agency § 1(1) (1958) (hereinafter "Restatement").  The fundamental duties of an agent include the duty of utmost loyalty and fidelity to the interests of his principal and the duty not to put himself in a position where his own interests may conflict with the interests of his principal.  *See King v. Bankerd*, 492 A.2d 608 (Md. 1985); *C-E-I-R, Inc., v. Computer Corp.*, 183 A.2d 374 (Md. 1961).  This duty includes not only the duty to act solely for the benefit of the principal on matters within the scope of his agency but also the duty not to take advantage of his position as agent. Restatement § 387, comment b.

*Id*. at 274-275.  The defendant in *Gussin* readily conceded that he acted as the plaintiffs' agent.

*Id*. at 273 ("Although Shockey was reluctant to characterize his role as that of a formal agent of

the Gussins, he did allow that he was an agent for them in the everyday meaning of the word . . .

In response to requests for admissions he also conceded he was acting as agent for the

Gussins.").

In this case, the parties dispute whether the proffered evidence supports a finding that

Defendants acted as Plaintiffs' agent.  Plaintiff Bernard J. Carl submits an affidavit detailing

facts that support an agency relationship.  (*See* Pls' Opp. Ex. A at ¶¶ 7, 10, 13, 15, 16-19, 35-37,

& 50.)  For example:

> We retained the defendants to care for, manage, stable and train a
> horse that Alex owned and those that we subsequently purchased
> on Lynne Little's recommendation.  Over the course of
> approximately four years, my wife Joan and I paid defendants
> roughly $1 million for these personal services (excluding the
> amounts we paid for the horses or for commissions on sales.

(*Id*. at ¶ 13.)  And with respect to the horse transactions at issue:

> Over the years, Joan and I purchased at least five horses (*Ransom*,
> *Granius*, *Cassis*, *White Russian*, and *Niagara*) on Lynne Little's
> recommendation that they were suited to be used by our daughters
> in training and competition.  Lynne Little had proposed a sixth
> horse, *Largo*, but we had not completed the sale because the horse
> turned out to be entirely unsuitable.  We specifically sought the
> services of Lynne Little, our daughters' trainer, to find horses for
> us to purchase that would be appropriate for our daughters' use. . .
> . We spent nearly $1 million on horses purchased for our
> daughters' use on Lynne Little's recommendation over a period of
> less than three years.

(*Id*. at ¶¶ 17-18.)  Plaintiffs also emphasize the contents of letters written by Defendants to

Plaintiffs.  (*See*, *e.g.*, Pls' Opp. Ex. B at RFI 01637 ("We have always operated on a basis of

trust, mutual respect, with the best interests of the horse and owner at heart.  This includes

authority to act in the owner's behalf to hire riders, blacksmiths, vets, make entries, etc."); Pls'

Opp. Ex. C at RFI 01663-64 ("It is agreed that Raylyn is authorized to act in the interest of

owner and in place of owner, as agent and to care for and market said horse as it deems fit and

appropriate for the seeming best interest of the horse and owner.").)

In contrast, Defendants contend that they never acted as Plaintiffs' agents:

> *Gussin* provides no basis for this Court to conclude that Raylyn
> was acting as the Carls' agent or partner with respect to the Carls'
> horse purchases.  Raylyn has certainly never admitted, either orally
> or in writing, that it was acting as agent for the Carls.
> Furthermore, Raylyn never led the Carls to believe that Raylyn
> was acting as their agent for the horses the Carls purchased from
> Raylyn.  On the contrary, Raylyn clearly explained to the Carls
> that Raylyn was a seller offering horses for purchase by the Carls.

(Defs' Reply p. 11.)  This argument is repeated later in Defendants' reply papers:

> In *Gussin*, the Court determined that there was an agency
> relationship between Shockey (defendant) and the Gussins
> (plaintiffs) based on (1) Shockey's admission that he was acting as
> the Gussins' agent, (2) unrebutted written evidence that Shockey
> was acting as Schockey's [sic] agent, (3) an unequivocal and
> undisputed oral agreement that Shockey was working as Gussins'
> agent, and (4) undisputed oral and written evidence that Shockey
> and the Gussins entered into a partnership agreement to purchase,
> invest in, breed and sell horses.  None of these elements is present
> in the case *sub judice*.

(*Id*. at p. 15; *see also id*. at p. 13 n.18 ("Conclusory allegations as to the existence of legal

relationships are not sufficient to survive a motion for summary judgment.").)  As the above

excerpts reveal, Defendants attempt to distinguish the *Guissin* decision on grounds that, in

*Guissin*, the matter of agency was *undisputed*.  This argument is not persuasive.  Defendants

simply fail to establish that there is no genuine factual dispute with respect to the existence of a

principal-agency relationship between Plaintiffs and Defendants.  Accordingly, Defendants'

Motion for Partial Summary Judgment is DENIED with respect to Counts 1, 2, and 3 of the

Amended Complaint.[9]

## CONCLUSION

For reasons stated above, Plaintiffs' Motion for Leave to file Surreply (Paper No. 55) is

GRANTED and Defendants' Motion for Partial Summary Judgment (Paper No. 41) is DENIED.

A separate Order follows.


Date: May 24, 2007

                                            /s/_____
                                            Richard D. Bennett
                                            United States District Judge

---

[9]       This Court does not reach the question whether Counts 1, 2, and 3 can also be
sustained on grounds that a "confidential relationship" existed between Plaintiffs and Defendants
under a "continuation of events" theory.  *Cf. Orwick v. Moldawer*, 822 A.2d 506, 536 (Md. Ct.
Spec. App. 2003) ("To establish such a relationship there must appear at least a condition from
which *dependence* of the grantor may be found. . . . [A] confidential relationship may be
presumed whenever two persons stand in such a relation to each other that one must necessarily
repose trust and confidence in the good faith and integrity of the other.") (emphasis added;
internal quotation marks omitted) (citing *Green v. Michael*, 36 A.2d 923, 926 (Md. 1944)).